**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                :
REGAL-PINNACLE INTEGRATIONS      :
INDUSTRIES, INC.,                :      Civ.A. 12-5465 (NLH/JS)
                                :
                                :
          Plaintiff,            :
                                :
     v.                         :      OPINION
                                :
                                :
PHILADELPHIA INDEMNITY           :
INSURANCE COMPANY,               :
                                :
                                :
          Defendants.           :
_____:
```

**APPEARANCES**:
RUDI GRUENEBERG, ESQUIRE
704 EAST MAIN STREET, BLDG. E
MOORESTOWN, NEW JERSEY 08057
     *Attorney for Plaintiff,*

STEVEN DAVID URGO, ESQUIRE
1650 MARKET STREET
ONE LIBERTY PLACE
SUITE 1800
PHILADELPHIA, PA 19103-7395
     *Attorney for Defendant.*

**HILLMAN, District J.**:

     Currently pending before the Court is Defendant Philadelphia

Indemnity Insurance Company's ("PIIC") Motion to Dismiss Counts I

and II of Plaintiff's Complaint.[1]  This Motion is unopposed by

Plaintiff Regal-Pinnacle Integrations Industries, Inc. ("RPI").

---

     [1]  In this Motion, Defendant also requests an extension of
time to respond to the remaining counts in Plaintiff's Complaint
pending the Court's resolution of the instant Motion to Dismiss
Counts I and II.  By letter order dated October 22, 2012, the
Court granted Defendant its requested extension of time.  [Docket
No. 11.]

For the reasons that follow, the Motion will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter stems from an insurance policy coverage dispute. Plaintiff RPI is a food service equipment and supply manufacturer located in Medford, New Jersey.  (Compl. ¶ 1.)  Defendant PIIC is an insurance agency based in Bala Cynwyd, Pennsylvania that provides liability insurance coverage.  (Id. ¶ 2.)

According to the facts alleged in Plaintiff's Complaint, on or about October 1, 2008, PIIC issued a Commercial Lines Insurance Policy, policy no. PHSD363092 (hereinafter "the Policy"), to Plaintiff RPI.  (Id. ¶ 7.)  The Policy insured RPI against loss or damage related to its commercial business operations, and covered the period between October 1, 2008 and October 1, 2009.  (Id. ¶¶ 7, 8.)  More specifically, the Policy indemnified RPI for "Loss From Claims made against [it] during the Policy Period [], and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act."  (Id. ¶ 9.)  An "Employment Practice Act" was defined in the Policy as including, *inter alia*, any actual or alleged: wrongful dismissal, discharge, or termination of employment; employment-related misrepresentation; violation of employment discrimination laws; wrongful deprivation of a career opportunity, sexual or workplace harassment of any kind; constructive discharge of employment;

2

employment-related retaliation; and violation of any federal, state or local civil rights laws.  (Id. ¶ 10.)  Part 5 of the Policy set forth the "Common Policy Exclusions," and stated that PIIC would not provide coverage for the following:

> (1) [A]ny litigation or demand against an Insured pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same or essentially the same facts as alleged in such prior litigation; or
> (2) Any Wrongful Act, fact, circumstances or situation which has been the subject of any written notice given under any other similar policy in which this Policy is a renewal or replacement.

(Id. ¶¶ 11, 12.)[2]  For purposes of insurance coverage, the applicable "Prior and Pending Date" was October 1, 2008 — the start date of the Policy.  (Id. ¶ 17.)

On April 4, 2007, former RPI employee Margaret Ann Hunter filed a verified complaint against RPI with the New Jersey Division of Civil Rights, alleging that RPI discriminated against her on account of her gender when it paid her less than her male counterparts and terminated her for complaining about the disparate treatment.  (See Def. Mot. Dismiss, Ex. 1, Admin. Compl. ("Admin. Compl.").)  The Civil Rights Division conducted an investigation into Hunter's claims, and determined that they

---

[2]   The Common Policy Exclusions were amended by the "Business Advantage Pro-Pack Elite Coverage" endorsement, and that this amendment superseded the original Part 5 of the Policy. (Id. ¶ 12.)  The above-quoted language is from the modified and presently controlling version of Part 5.  (Id.)

were without merit. (Compl. ¶ 20.)  Shortly thereafter, Hunter withdrew her administrative action with the Civil Rights Division.  (Id.)  Then, on February 13, 2009, she filed suit in New Jersey state court alleging wrongful and discriminatory conduct related to her employment and termination at RPI.  (Id. ¶ 21.)  Unlike her administrative action, however, Hunter's civil complaint included claims based upon sexual harassment.  (Id. ¶ 22.)

In May of 2009, RPI contacted PIIC to ascertain whether it would provide defense counsel and cover losses incurred during the course of the Hunter litigation.  (Id. ¶ 23.)  According to Plaintiff, PIIC initially refused to provide it with either defense counsel or insurance coverage.  (Id. ¶¶ 27-28.)  In the ensuing weeks, however, RPI and PIIC continued to discuss the extent of the Policy's coverage.  (Id. ¶¶ 28-29.)  By January of 2012, PIIC still refused to provide RPI with counsel to litigate the matter, but had agreed to cover a portion of the cost needed to retain private counsel and indemnify RPI for the cost of any judgment incurred — including a settlement — up to $100,000. (Id. ¶¶ 32, 33.)  With the trial date for Hunter's civil suit approaching, RPI and PIIC began to negotiate the amount that PIIC was willing to cover if RPI settled its dispute with Hunter. (Id. ¶ 34.)  Although the parties never formally agreed to as much, they apparently had several discussions about whether PIIC

4

would indemnify RPI for a settlement up to $125,000.  (Id.)
According to Plaintiff, PIIC indicated that it was willing to do
so, and that its only concern with the increased settlement
amount was whether liability from a third party claim related to
the Hunter lawsuit remained a possibility at that time.  (Id. ¶
34-36, 39.)

In the days leading up Hunter's trial date, RPI and Hunter
engaged in a series of settlement discussions.  (Id. ¶¶ 37-38.)
Plaintiff avers that, at all times, it disclosed the status of
the negotiations to PIIC, and only engaged in discussions with
Hunter because it believed that it would be indemnified for a
settlement of up to at least $100,000.  (Id. ¶¶ 37-38, 42.)  On
February 13, 2012, RPI reached a settlement with Hunter for an
undisclosed amount.  (Id. ¶ 40.)  Two days later, PIIC withdrew
its offer to indemnify RPI for the Hunter settlement, reasoning
that RPI's coverage request for $125,000 operated as a counter-
offer that nullified its prior agreement to pay $100,000.  (Id.
¶¶ 41, 44.)  According to Plaintiff, PIIC subsequently
acknowledged that it was "confused" about the settlement
negotiations and its purported agreement to provide RPI with
coverage, and offered to settle the dispute with RPI for $35,000
on March 2, 2012.  (Id. ¶ 47.)  RPI rejected this settlement
offer.  (Id. ¶ 48.)  PIIC then offered to settle the dispute with
RPI for $50,000 — an offer which RPI also rejected.  (Id.)

5

On August 30, 2012, Plaintiff RPI filed the instant
Complaint before this Court, asserting five counts against
Defendant PIIC: (1) a declaratory judgment requesting the Court
to declare the rights and legal obligations of the parties under
the Policy; (2) breach of contract; (3) breach of the implied
covenant of good faith and fair dealing; (4) promissory
estoppel/detrimental reliance; and (5) bad faith.  On October 18,
2012, Defendant PIIC filed the instant Motion to Dismiss Counts I
and II of Plaintiff's Complaint, and sought to preserve its right
to move for dismissal on Plaintiff's remaining claims after the
Court's resolution of the instant matter. [Docket No. 9.]  The
Court granted Defendant's preservation request by letter order
dated October 22, 2012. [Docket No. 11.]  To date, Plaintiff has
not responded to Defendant's Motion to Dismiss, nor has it
requested an extension of time to do so.  Accordingly, the Court
treats Defendant's Motion as unopposed.

## II.  JURISDICTION

The Court has subject matter jurisdiction over this matter
pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute,
which provides that: "[t]he district courts shall have original
jurisdiction of all civil actions where the matter in controversy
exceeds the sum or value of $ 75,000, exclusive of interest and
costs, and is between [c]itizens of different States[.]" 28
U.S.C. § 1331(a)(1).  Plaintiff RPI is a New Jersey corporation

6

with its principal place of business located in Medford, New
Jersey.  Defendant PIIC is Pennsylvania corporation with its
principal place of business located in Bala Cynwyd, Pennsylvania.
As such, complete diversity exists between the parties.
Moreover, the amount in controversy in this dispute is alleged to
exceed $75,000.

### III. STANDARD OF LAW

When considering a motion to dismiss a complaint for failure
to state a claim upon which relief can be granted pursuant to
Federal Rule of Civil Procedure 12(b)(6), a court must accept all
well-pleaded allegations in the complaint as true and view them
in the light most favorable to the plaintiff.  Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled
that a pleading is sufficient if it contains "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal
pleading rules, it is not necessary to plead evidence, and it is
not necessary to plead all the facts that serve as a basis for
the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d
Cir. 1977).  However, "[a]lthough the Federal Rules of Civil
Procedure do not require a claimant to set forth an intricately
detailed description of the asserted basis for relief, they do
require that the pleadings give defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests."

7

Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3
(1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim.'"
Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft
v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions' . . .
."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)
("Iqbal . . . provides the final nail-in-the-coffin for the 'no
set of facts' standard that applied to federal complaints before
Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the factual and legal elements of a claim
should be separated; a district court must accept all of the
complaint's well-pleaded facts as true, but may disregard any
legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S.
Ct. at 1950).  Second, a district court must then determine
whether the facts alleged in the complaint are sufficient to show
that the plaintiff has a "'plausible claim for relief.'"  Id.
(quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more
than allege the plaintiff's entitlement to relief.  Id.; see also

8

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)
(stating that the "Supreme Court's Twombly formulation of the
pleading standard can be summed up thus: 'stating . . . a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary element").
A court need not credit either "bald assertions" or "legal
conclusions" in a complaint when deciding a motion to dismiss.
In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30
(3d Cir. 1997).  The defendant bears the burden of showing that
no claim has been presented.  Hedges v. United States, 404 F.3d
744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor,
Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, even when a defendant's motion to dismiss is not
opposed by the plaintiff, the court must nonetheless address the
merits of the plaintiff's claims when ruling on the motion to
dismiss.  See Stackhouse v. Mazurkiewiz, 951 F.2d 29, 30 (3d Cir.
1991).  To do otherwise would dismiss the plaintiff's claims for
failure to adhere to a local court rule rather than for failure
to state a claim upon which relief could be granted.  Id.[3]

---

[3]   Defendant attached several documents to its Motion to
Dismiss, including Hunter's verified complaint filed with the New
Jersey Division of Civil Rights and her civil complaint filed in

**IV.  DISCUSSION**

In the instant Motion, Defendant moves to dismiss Counts I and II of Plaintiff's Complaint.  In Count I, Plaintiff requests the Court to declare that PIIC was required to provide it with insurance coverage for Hunter's civil suit in New Jersey state court.  In Count II, RPI argues that PIIC breached the terms of the insurance policy agreement when it declined to provide coverage for the civil suit.  Defendant moves to dismiss these two claims on the basis that, under the express terms of the Policy, it was not required to indemnify RPI for the Hunter litigation.  Defendant thus argues that, since it was not required to provide RPI with coverage for the underlying

---

New Jersey state court.  Ordinarily, when a motion to dismiss references documents outside the pleadings, it converts into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rule of Civil Procedure.  See Prudential Ins. Co. of Amer. v. Eisen, No.Civ.A.11-05872, 2012 WL 876747, at *3 (E.D. Pa. Mar. 15, 2012) (citing Phat Van Le v. Univ. of Med. & Dentistry of N.J., No.Civ.A.09-2632, 2010 WL 1896415, at *4 (3d Cir. May 12, 2010))(further citation omitted).  The Third Circuit has previously recognized, however, that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)(internal citations omitted).  Morever, "a court may take judicial notice of public records."  See Grynberg v. Total Compagnie Francaise Des Petroles, No.Civ.A.10-1088, 2012 WL 4095186, at *6 (D. Del. Sept. 18, 2012) (citing M & M Stone Co. v. Pa. Dep't. of Envt'l. Prot., 388 F. App'x 156, 162 (3d Cir. July 28, 2010)).  Given that Hunter's complaints in both her administrative and civil actions are public records and that neither party disputes their authenticity, the Court will not convert Defendant's Motion to Dismiss into a summary judgment motion on this basis.

litigation in the first instance, it could not have breached the contract between the parties.  The Court analyzes each issue separately below.

   **A.  The Declaratory Judgment: Whether PIIC was Required to Provide RPI With Coverage for the Underlying Hunter Litigation**

Under New Jersey law, "[i]nsurance coverage is a matter of contract law determined by the language of insurance agreements." Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 281 (D.N.J. 2011) (citing Longobardi v. Chubb Ins. Co. of N.J., 582 A.2d 1257, 1260 (N.J. 1990)).  When the policy's language is clear and unambiguous, the court is bound to enforce it according to its plain and ordinary meaning.  Stafford v. Scottsdale Ins. Co., 416 F. App'x 191, 194 (3d Cir. 2010) (citing Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992)).[4]  If there is any ambiguity with regard to wording in the policy, however, the language should be "construed liberally in the insured's favor." Ayala, 804 F. Supp. 2d at 281 (citing Longobardi, 582 A.2d at 1260); see also Zurich Am. Ins. Co. v. Keating Bldg. Corp., 513

---

[4]  It is well-recognized that insurance policies may be afforded a different interpretation if their ordinary meaning is clear, but is "'inconsistent with public expectations and commercially accepted standards.'" Ayala, 804 F. Supp. 2d at 281 (quoting Werner Indus. v. First State Ins. Co., 548 A.2d 188, 191 (N.J. 1988) (further citation omitted)).  Here, Defendant does not dispute that the Policy at issue is commercially acceptable and consistent with public expectations.  As such, the Court sees no reason for this exception to apply under the present circumstances.

F. Supp. 2d 55, 64 (D.N.J. 2007).  "A provision of an insurance policy is ambiguous if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning."  <u>Vlastos v. Sumitoma Marine Fire Ins. Co.</u>, 707 F.2d 775, 778 (3d Cir. 1983).  Moreover, when analyzing an insurance policy, the court must view it from the perspective of an average policyholder.  <u>Zurich</u>, 513 F.Supp.2d at 69; <u>Cont'l Cas. Co. v. Gamble</u>, No.Civ.A.05-5189, 2007 WL 1657107, at *4 (D.N.J. June 5, 2007)(citing <u>Morrison v. Am. Int'l Ins. Co. of Am.</u>,887 A.2d 166, 169 (N.J. Super. 2005)(internal citations omitted)).

    In accordance with these principles of law, the Court turns to the relevant provisions of the insurance policy agreement between RPI and PIIC.  The Policy begins by stating that: "This Policy is written on a claims made basis and covers only those claims first made during the Policy Period and reported in writing to the Insurer pursuant to the terms herein."  (Compl., Ex. A, Phila. Indem. Ins. Co. Policy No. PIISD363092 ("Policy") at 5.).  It is well-recognized in New Jersey that "[u]nder a 'claims-made' policy, the event that invokes coverage is 'transmittal of notice of the claim to the insurance carrier.'"  <u>G-I Holdings v. Hartford Fire Ins. Co.</u>, No.Civ.A.00-6189, 2007 U.S. Dist. LEXIS 19069, at *20 (D.N.J. Mar. 16, 2007) (quoting <u>Zuckerman v. Nat'l Union Fire Ins. Co.</u>, 100 N.J. 304, 324 (1985))

(further citation omitted).  The text of the agreement indicates that the Policy Period spanned from October 1, 2008 through October 1, 2009.  (Policy at 2.)  A "claim" under the Policy is defined to include both (1) a judicial or civil proceeding commenced by service of a complaint or similar pleading, and (2) a formal administrative proceeding commenced by the filing of a formal notice of charges or formal investigation.  (<u>Id.</u> at 24.)  The text of the Policy further provides that PIIC would cover "Loss from Claims made against the Insured . . . for an Employment Practice Act."  (<u>Id.</u> at 20.)  The Policy then goes on to list seventeen employment-related discrimination, wrongful dismissal and discharge, harassment, and retaliation actions that constitute Employment Practice Acts entitled to coverage.  (<u>Id.</u>)  More so, "Loss" is defined under the Policy to include both damages and defense costs.  (<u>Id.</u> at 26.)

The crux of PIIC's present argument centers on two exclusion provisions in the Policy.  The first provision — the Prior and Pending Litigation Exclusion — states in relevant part as follows:

> The Underwriter shall not be liable to make any payment for Loss in connection with any claim made against the Insured:
>                         . . .
>     arising out of, based upon or attributable to: (1) any litigation or demand against an Insured pending on or before the respective Prior and Pending Date . . . , or the same or essentially the same facts

as alleged in such prior litigation.[5]

(Id. at 28, 37.)  The second exclusion provision at issue here —
the Interrelated Wrongful Acts provision — is similar to the
above exclusion, and provides in full as follows:

> All Loss arising out of the same Wrongful Act and all
> Interrelated Wrongful Acts shall be deemed one Loss on
> account of a one [*sic*] claim.  Such Claim shall be deemed
> to be first made when the earliest of such Claims was
> first made[.]

(Id. at 32.)  An "Interrelated Wrongful Act" is defined under the
Policy as: "any causally connected Wrongful Act or any series of
the same, similar or related Wrongful Acts," and, for purposes of
employment disputes, a "Wrongful Act" is defined as one of the
seventeen previously-discussed Employment Practice Acts.  (Id. at
26, 28.)

PIIC relies on these two contractual provisions to argue
that Hunter's administrative and civil actions constituted one
claim under the Policy because they both arose out of and were
based upon the same factual allegations, causes of action, and
Employment Practice Acts — namely, Hunter's alleged wrongful
termination and employment discrimination on account of her
gender.  Since both actions were premised upon the same facts and

---

[5]  As noted above, the Common Policy Exclusions section of
the Policy was amended at some point after the parties entered
into the initial insurance agreement.  Neither party disputes
that the amended language of the exclusions provision, quoted
above, is the controlling contractual language here.

theories of recovery, Defendant asserts that coverage for
Hunter's subsequent civil suit was barred under the Prior and
Pending Exclusion provision.  In a separate but closely related
point, PIIC also argues that the administrative and civil actions
are interrelated because they are based upon the same Wrongful
Acts.  Further, since the Policy's express language states that
an interrelated claim is considered to be made at the time of the
earliest underlying Wrongful Act, Defendant asserts that RPI was
not entitled to coverage because Hunter filed her administration
action in 2007 before the start of the Policy Period.

Similar exclusion provisions in insurance policies have
previously been interpreted by both federal and state courts in
New Jersey under similar factual circumstances.  See G-I
Holdings, 2007 U.S. Dist. LEXIS 19069 at *23; Gladstone v.
Westport Ins. Corp., No.Civ.A.10-652, 2011 U.S. Dist. LEXIS
132100, at *22 (D.N.J. Nov. 16, 2011); Passaic Valley Sewerage
Comm'r v. St. Paul Fire & Marine Ins., 2010 N.J. Super. Unpub.
LEXIS 475 (N.J. Super. Mar. 8, 2010); First Trenton Indemn. Co.
v. River Imaging, P.A., No.Civ.A.6191-06T3, 2009 N.J. Super.
Unpub. LEXIS 2190, at *13 (N.J. Super. 2009).  In fact, given
their close relation and interpretation, courts have previously
jointly analyzed interrelated wrongful act and prior and pending
litigation exclusion provisions.  See id. at *10.  It has been
recognized that such provisions should be strictly construed

against the insurer, and that coverage should only be excluded if the insurer can show a "substantial overlap" between the facts and claims alleged in prior and subsequent actions.  See id. at *13; G-I Holdings, 2007 U.S. Dist. LEXIS 19069 at *23 (citing Ruvolo v. Am. Cas. Co., 189 A.2d 204 (1963); Deodato v. Hartford Ins. Co., 363 A.2d 361 (App. Div. 1976)).  Moreover, in order to constitute an interrelated wrongful act, the allegations in the second complaint must find substantial support in the first complaint, and cannot be comprised of "'legally distinct claims that allege different wrongs to different people.'"  River Imaging, 2009 N.J. Super. Unpub. LEXIS 2190 at *13-14 (quoting Nat'l Union Fire Ins. Co. v. Ambassador Grp., Inc., 691 F.Supp. 618, 623 (E.D.N.Y. 1988); Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 499 (1st Cir. 2005)).

A fellow federal court in this District addressed a substantially similar claims-made insurance policy and interrelated wrongful act provision in G-I Holdings v. Hartford Fire Insurance Company, No.Civ.A.00-6189, 2007 U.S. Dist. LEXIS 19069 (D.N.J. Mar. 16, 2007).  In that case, a class action complaint based on the insured plaintiff's alleged fraudulent conduct was filed in January of 2000.  Id. at *21.  Six months later, the insurer issued an insurance policy to the plaintiff which contained an interrelated wrongful act provision.  Id. Subsequently, two similar lawsuits based upon the insurer's

16

alleged fraudulent conduct were filed within the time span covered by the policy.  Id. at *21-22.  In analyzing the lawsuits, the court found all three actions to be interrelated because they stemmed from the same underlying wrongful conduct.  Id. at *22.  In so finding, the court noted that it had to look no further than the pleadings, which cited the same facts and made vastly similar allegations.  Id.  Given their interrelated nature, the court held that all of the underlying actions constituted one claim and related back to the date of the first-filed action, which preceded the inception of the policy by six months.  Id. at *23-24.  Accordingly, the insurer was not required to provide coverage for any of the underlying lawsuits.

In Federal Insurance Company v. Raytheon Company, 426 F.3d 491 (1st Cir. 2005), the First Circuit Court of Appeals interpreted and applied a prior and pending litigation exclusion provision similar to the one at issue in the instant case.[6] Raytheon involved two class action suits brought against the Raytheon Company.  One suit was filed in October of 1999, and alleged various securities laws violations.  Id. at 493-94.  The second suit was filed in May of 2003, and was based upon the Employee Retirement Income Security Act of 1974 ("ERISA").  Id.

---

[6]  The Third Circuit has not yet analyzed a similar prior and pending litigation exclusion provision.  However, as discussed infra, similar provisions have been addressed by the New Jersey state courts.  See River Imaging, 2009 N.J. Super. Unpub. LEXIS 2190 at *10-17.

at 494.  Following the filing of the ERISA Complaint, Raytheon

sought coverage from the insurer.  Id. at 495.  The insurer,

however, denied coverage on the basis of the prior and pending

litigation exclusion provision in the policy.[7]  Id. at 495.  In

analyzing both complaints, the First Circuit noted that the

factual allegations in the Securities Complaint were nearly

identical to those made in the ERISA Complaint.  Id. at 494.  In

fact, the only notable differences between the two were that they

involved different parties, asserted differing theories of

recovery under securities laws and ERISA, and the fact that the

ERISA Complaint included factual allegations that took place

after the filing of the Securities Complaint in 1999.  Id. at

495-96.  In assessing the two underlying actions, the First

Circuit looked to the "substantial overlap" between the two

pleadings:

> [T]he policy thus requires the allegations in the second
> complaint to find substantial support in the first
> complaint, *i.e.* that the allegations of the second
> complaint substantially overlap those of the first.  Only

---

[7]  The prior and pending litigation exclusion provision in
the Raytheon policy stated, in relevant part, as follows:

> The [insurer] shall not be liable for Loss on account of
> any Claim made against any Insured . . . based upon,
> arising from, or in consequence of any demand, suit or
> other proceeding pending, or order, decree or judgment
> entered against any Insured, on or prior to [September
> 15, 2000], or the same or any substantially similar fact,
> circumstance or situation underlying or alleged therein.

Id. at 495.

> with a substantial overlap can the first complaint be
> said to be a "foundation or logical basis" for the
> second. . . . [T]he appropriate inquiry is whether the
> second complaint substantially overlaps the first with
> respect to relevant facts, without regard to whether the
> first complaint substantially overlaps the second.

Id. at 499.  Thus, despite the apparent differences between the

Securities and ERISA Complaints, the First Circuit found that

there was substantial overlap between the two, and that the prior

and pending litigation exclusion provision therefore prevented

the plaintiff from obtaining coverage.  Id. at 499-501.

Moreover, in First Trenton Indemnity Company v. River

Imaging, P.A., No.Civ.A.6191-06T3, 2009 N.J. Super. Unpub. LEXIS

2190 (N.J. Super. 2009), the Superior Court of New Jersey jointly

analyzed an interrelated wrongful act provision and a prior

litigation exclusion provision similar to the one in the case at

hand.  Id. at *9-17.  In that case, two doctors previously

brought a breach of contract suit against a healthcare provider

related to the specific practice where they were employed.  Id.

at *14.  The basis of the dispute was that the healthcare

provider insufficiently managed and failed to make needed

investments to expand the practice, incurred unnecessary

expenses, entered into disadvantageous contracts, and

misappropriated funds properly allocated to the physicians.  Id.

Three insurance companies subsequently filed suit against the

healthcare entity seeking to recover personal injury protection

benefits because the provider operated unlicensed medical facilities, engaged in fraudulent overbilling, and operated medical facilities not under the control and supervision of licensed physicians.  Id. at *3.  The insurer claimed that it was not required to provide the insured with coverage based on the interrelated wrongful acts and prior litigation exclusion provisions.  In assessing both underlying actions, the court found them to be sufficiently distinct from one another.  More specifically, the court recognized that the factual allegations did not substantially overlap between the two actions, and that the parties involved and claims advanced by them were different. Id. at *16, 17.  Given these distinctions, the court found that the insurer could not deny coverage to the insured on this basis. Id. at *17.

When interpreting the exclusion provisions at issue in the instant case with these cases as a backdrop, it is apparent to the Court that there is substantial overlap between Hunter's administrative action and her subsequent civil suit filed in New Jersey state court.  The Court need look no further than the complaints filed in both actions to determine that Hunter's civil suit arose from and was based upon the same set of factual allegations and claims made in her earlier administrative action. Both suits involved identical parties and similar claims rooted in the New Jersey Law Against Discrimination ("NJLAD").  Although

20

Hunter's civil suit also included a claim under the New Jersey
Equal Pay Act that was not alleged in her administrative action,
it is evident to the Court that this claim is a progression of
the NJLAD claim.  Indeed, of the forty-one paragraphs in the
civil complaint, the Equal Pay Act claim is comprised of only two
short paragraphs, while her NJLAD claims comprise the remainder
of the complaint.  Hunter herself, in fact, acknowledged the
substantial overlap between the two claims in her civil
complaint: "If for whatever reason plaintiff's argument that she
was discriminatorily denied equal pay fails . . . under the
[NJ]LAD, plaintiff claims alternative relief under the New Jersey
Equal Pay Act[.]"  (See Def. Mot. Dismiss, Ex. 2, N.J. Super. Ct.
Compl. ("Civil Compl.") ¶ 39.)  Furthermore, the overlap of
factual allegations between the two lawsuits is substantial
enough to find that the administrative pleading served as a
"foundation and logical basis" for the civil complaint.  Indeed,
it would be fair to say that all the allegations contained in
Hunter's administrative pleading are also included in her
subsequent civil pleading.  While the civil complaint contains
sexual harassment claims not present in the administrative suit,
this does not change the fact that all the claims and assertions
in both actions relate to RPI's alleged discrimination of Hunter
on account of her gender.  It has previously been recognized that
"complete identity between the two lawsuits is plainly not

21

required. . . . and [] differences in theories of recovery or the identity of parties in the proceedings do not in and of themselves preclude exclusion," and that "acknowledging that there are substantial areas of non-overlap does not defeat . . . [the] substantial overlap between [] two complaints." Raytheon, 426 F.3d at 497-98.  As such, the pleadings in both underlying actions need not have been identical to preclude coverage.

Given the substantial overlap of factual allegations and causes of action in the two underlying suits, the Court finds that, based on the express language of the Interrelated Wrongful Acts and Prior and Pending Litigation exclusion provisions, Hunter's subsequent civil action was based upon and interrelated with her earlier administrative action that took place prior to the start of the Policy Period.  As such, PIIC was not required to provide RPI with coverage for Hunter's civil suit.  The Court therefore declines to enter a judgment declaring that Defendant PIIC was required to provide Plaintiff RPI with coverage for the civil action.  Accordingly, Defendant's request to dismiss Count I of Plaintiff's Complaint will be granted.

**B.    The Breach of Contract Claim: Whether PIIC Breached the Policy**

Defendant also alleges that it did not breach the insurance policy agreement between the parties because it was not required to provide Plaintiff with coverage for Hunter's civil suit under the terms of the Policy in the first instance.  The Court,

however, finds that dismissal of Plaintiff's breach of contract claim is premature at this point in time.

In order to sufficiently make out a breach of contract claim under New Jersey law, a plaintiff must show that: (1) a valid contract existed, (2) the contract was breached, and (3) damages resulted from that breach. Travelodge Hotels, Inc. v. Meridian Global Invs., LP, No.Civ.A.11-2599, 2012 U.S. Dist. LEXIS 84708, at *9 (D.N.J. June 15, 2012) (citing Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. 2007)).  Here, neither party disputes that the Policy constituted a valid contract.  Rather, Defendant argues that it did not breach the contract between the parties because PIIC was not required to indemnify RPI for the Hunter litigation under the Policy's terms in the first instance.  In most instances, if the court has before it a valid contract, its "express (and therefore literal) terms [] will control," and the court should avoid looking outside the four corners of the contract to determine the intent of the parties.  Format Corp. v. Widewaters Prop. Dev. Corp., 162 F. App'x 168, 170 (3d Cir. 2006) (citing Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 92 (3d Cir. 2001)).  However, New Jersey courts have previously recognized that, "[i]n appropriate circumstances, a court may find that the parties to a contract have modified its terms by a subsequent oral agreement, even if the contract purported to permit only written modifications, and the parol

23

evidence rule[8] does not bar evidence of the oral agreement."
<u>Nat'l Fin. Support Servs., LLC v. U.S. Mortg. Corp. & CU Nat'l
Mortg., LLC</u>, No.Civ.A.3987-04T2, 2007 N.J. Super. Unpub. LEXIS
1276 at *12-13 (N.J. Super. Feb. 13, 2007) (citing <u>Lewis v.
Travelers Ins. Co.</u>, 51 N.J. 244, 253 (1968)).  "More generally, a
party may be estopped if it acted or made a representation
'intentionally or under circumstances that it was both natural
and probable that it would induce action,' and if an adverse
party relied on that action or representation to its detriment."
<u>Nat'l Fin. Support Servs.</u>, 2007 N.J. Super. Unpub. LEXIS 1276, at
*13 (quoting <u>Miller v. Miller</u>, 97 N.J. 154, 163 (1984)); <u>see also
Nhung Le Phan v. L. Warner Cos.</u>, No.Civ.A.11-0027, 2011 U.S.
Dist. LEXIS 144257, at *15 (D.N.J. Dec. 14, 2011) (Kugler, J.)
(applying Maryland law) ("[T]he conduct of parties to a contract
may be evidence of a subsequent modification of their
contract.").

     Here, Defendant asserts that it did not breach the insurance
policy agreement because, pursuant to the Interrelated Wrongful
Acts and Prior and Pending Litigation exclusion provisions, it
was not required to indemnify RPI for the Hunter litigation in
the first instance.  The Court is also cognizant of the fact that

_____

     [8] The parol evidence rule prohibits the introduction of
evidence that tends to alter an integrated written document.
<u>Nemco Constr. Corp. v. AARK Constr. Grp.</u>, No. Civ.A.A-4809-07T3,
2009 N.J. Super. Unpub. LEXIS 1305, at *9 (N.J. Super. May 29,
2009 ) (citing <i>Restatement (Second) of Contracts</i> § 213 (1981)).

the Policy contains a provision stating it may only be modified by written notice.[9]   However, the factual record before the Court indicates that, in the weeks leading up to Hunter's trial in her civil case, PIIC repeatedly indicated to RPI that it would cover a portion of the cost needed to retain private counsel and indemnify it for a settlement reached with Hunter, up to at least $100,000, and potentially $125,000.[10]   In viewing these facts in the light most favorable to Plaintiff, one could plausibly determine that the parties modified the Policy's terms by a subsequent oral agreement — regardless of the fact that the Policy purported to only permit written modifications — when PIIC repeatedly represented to RPI that it would partially indemnify it for Hunter's civil suit.   One could also reasonably conclude that it was natural and probable for RPI to rely on these

---

[9]   This provision of the Policy states in full as follows:

Except by written endorsement issued to the Insured forming a part of this Policy, nothing shall effect a change in or addition to the provisions of this Policy. Furthermore, under no circumstances shall the Underwriter be deemed to have waived or be estopped from asserting any right under this Policy, at law, or in equity respecting any Claim except as stated in writing by the Underwriter's authorized Claims Department representative.

(Policy at 34.)

[10]   PIIC's alleged representations that it was willing to cover a settlement with Hunter up to $125,000 is an issue that is disputed by the parties.   Defendant does not, however, appear to contest that it previously made representations to RPI that it was willing to cover a settlement with Hunter up to $100,000.

representations when it expended resources, retained private counsel, and entered into a settlement agreement with Hunter.  As such, it may be appropriate under the circumstances present in this case to look outside the four corners of the insurance agreement and consider the parties' subsequent conduct.  Moreover, Plaintiff's breach of contract claim in Count II is intricately tied to the remaining claims in its Complaint for breach of implied covenant of good faith and fair dealing, promissory estoppel, and bad faith — claims which Defendant has not moved to dismiss.  In other words, all of Plaintiff's contractually-based claims should be assessed together.  As such, the Court finds that, at this preliminary stage of proceedings and under the factual circumstances present in this case, dismissal of Plaintiff's breach of contract claim would be premature at this point in time.[11]  Accordingly, Defendant's request to dismiss Count II of Plaintiff's Complaint will be denied.

**V.   CONCLUSION**

For the reasons set forth above, the Court will not acquiesce in Plaintiff's request in Count I to declare that Defendant PIIC was required to indemnify it for the Hunter

---

[11]  To be clear, the Court does not presently find that the parties here actually modified the terms of their agreement, but rather merely raises the issue of the parties' conduct and oral discussions as evincing why dismissal of Plaintiff's claims would be inappropriate at this preliminary stage of the proceedings.

26

litigation under the terms of the Policy.  Accordingly, Count I
will be dismissed.  Defendant's request to dismiss Plaintiff's
breach of contract claim in Count II, however, will be denied as
dismissal on this point is premature at this time.

    An appropriate Order follows.


                                        */s/ Noel L. Hillman*

At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

Dated: <u>April 22, 2013</u>